**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Antonio Vashon Barnes, Jr., Appellant.

Appellate Case No. 2023-001390

———

Appeal From Richland County
Clifton Newman, Circuit Court Judge

———

Unpublished Opinion No. 2026-UP-393
Heard April 7, 2026 – Filed August 5, 2026

———

**AFFIRMED IN PART AND REVERSED IN PART
AND REMANDED**

———

Senior Appellate Defender Lara Mary Caudy, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Senior Assistant
Deputy Attorney General Melody Jane Brown, and
Assistant Attorney General William Joseph Maye, all of
Columbia, for Respondent.

———

**PER CURIAM:**  Antonio Vashon Barnes, Jr. appeals his convictions and concurrent sentences of thirty-five years' imprisonment for murder and five years' imprisonment for possession of a weapon during a violent crime.  On appeal, Barnes argues the trial court (1) erred by denying him immunity from prosecution under the Protection of Persons and Property Act[1] (the Act); (2) erred by failing to properly instruct the jury on the defense of habitation; (3) abused its discretion by admitting evidence of Barnes's possession and distribution of marijuana and possession of firearms and ammunition; (4) abused its discretion by admitting lyrics from a song Barnes rapped and posted online; (5) abused its discretion by refusing to admit certain video footage of Barnes as a prior consistent statement; and (6) erred by refusing to grant a new trial based on cumulative error.  We reverse and remand for a new trial.

## FACTS/PROCEDURAL HISTORY

In 2022, Barnes was indicted for murder and possession of a weapon during the commission of a violent crime in connection with the killing of his roommate, Antonio Dash, and Eric Griffin.  Barnes moved for immunity from prosecution under the Act, and the trial court held an immunity hearing.  The trial court denied Barnes immunity from prosecution, and a jury found Barnes guilty in December 2022 on both charges.  Barnes subsequently filed a motion for a new trial, which the trial court denied.  This appeal followed.

## ISSUES ON APPEAL

I.   Did the trial court err by denying Barnes immunity from prosecution under the Act?

II.  Did the trial court abuse its discretion by admitting lyrics from a song Barnes rapped and posted on YouTube under Rules 402, 403, and 404(b), SCRE, and when the State failed to disclose the evidence to Barnes in violation of Rule 5 of the South Carolina Rules of Criminal Procedure?

III. Did the trial court abuse its discretion by refusing to admit Barnes's Exhibit No. 108 (a prior consistent statement) pursuant to Rule 801(d)(1)(B), SCRE?

IV. Did the trial court abuse its discretion by admitting evidence of Barnes's marijuana possession, prior marijuana distribution, and possession of unrelated

---

[1] S.C. Code Ann. § 16-11-410, et. seq. (2015).

firearms and ammunition under Rules 402, 403, and 404(b) of the South Carolina Rules of Evidence?

V. Did the trial court err in instructing the jury on the defense of habitation as requested by Barnes?

VI. Did the trial court err by refusing to grant a new trial based on the cumulative effect of the trial errors?

## LAW/ANALYSIS

### I.      Immunity Hearing

Barnes argues the trial court erred in denying him immunity because he proved by a preponderance of the evidence that he was entitled to immunity under the Act. He contends the evidence showed he was immune under (1) the common law defense of habitation, (2) the common law defense of self-defense, (3) section 16-11-440(A) of the South Carolina Code, and (4) section 16-11-440(C) of the Code.  We disagree.

"A defendant's entitlement to immunity from prosecution under the [Act] must be decided pretrial using a preponderance of the evidence standard."  *State v. Glenn*, 429 S.C. 108, 116, 838 S.E.2d 491, 495 (2019).  "This court reviews an immunity determination for abuse of discretion."  *Id.*  "A trial court abuses its discretion when its ruling is based on an error of law, or when grounded in factual conclusions, is without evidentiary support."  *Id.*  "In determining the validity of an immunity hearing's outcome, 'this court cannot reweigh the evidence or second-guess the [circuit] court's assessment of witness credibility.'"  *State v. Rosenbaum*, 438 S.C. 91, 102, 882 S.E.2d 180, 186 (Ct. App. 2022) (alteration in original) (quoting *State v. Oates*, 421 S.C. 1, 17, 803 S.E.2d 911, 920 (Ct. App. 2017)).

Self-defense

"A person who uses deadly force as permitted by the [Act] or another applicable provision of law is justified . . . and is immune from criminal prosecution . . . ." § 16-11-450(A).  Our supreme court has recognized that "'another applicable provision of law' includes the common law of self-defense." *Glenn*, 429 S.C. at 117, 838 S.E.2d at 496.  "Accordingly, a trial court should first consider whether the defendant has proved the elements of self-defense by a preponderance of the evidence."  *Id.* at 118, 838 S.E.2d at 496.  "If the defendant has failed to meet the

elements of reasonable fear or the duty to retreat, the court should then determine whether section 16-11-440(A) or (C) is applicable." *Id.*

To establish a case of self-defense, a defendant must establish four elements:

> First, the defendant must be without fault in bringing on the difficulty. Second, the defendant must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger. Third, if his defense is based upon his belief of imminent danger, a reasonably prudent man of ordinary firmness and courage would have entertained the same belief. If the defendant actually was in imminent danger, the circumstances were such as would warrant a man of ordinary prudence, firmness and courage to strike the fatal blow in order to save himself from serious bodily harm or losing his own life. Fourth, the defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily injury than to act as he did in this particular instance.

*State v. Douglas*, 411 S.C. 307, 318, 786 S.E.2d 232, 238–39 (Ct. App. 2014). "[T]he last element, i.e., the duty to retreat, need not be shown when seeking immunity under the Act." *Id.* at 318, 786 S.E.2d at 239.

We hold the trial court did not abuse its discretion in finding Barnes did not establish self-defense. We agree with the trial court that Barnes failed to establish he was in actual imminent danger or reasonably believed he was in imminent danger because no evidence shows that the men attacked, threatened, or even noticed Barnes. We acknowledge that this incident occurred inside Barnes's apartment and that the testimony indicated Barnes believed both his roommates were gone that morning and it was their habit of being gone at that time. We further acknowledge testimony that Barnes believed he was being robbed and "getting smoked." However, the hearing testimony conflicted as to whether Barnes believed both his roommates were gone or if he may have actually seen Griffin and Dash in his apartment that morning when Griffin first arrived. Additionally, there

was no evidence that officers found another weapon at the scene or that either Griffin or Dash had one at the time.[2]

We also agree with the trial court that a reasonable person would not have entertained the same belief as Barnes. The evidence at the hearing indicated Barnes saw the men on the ground and began shooting.[3] There was no evidence he tried to stop the men, tell them to leave, or pause any longer than to observe them on the ground. We also highlight that the evidence demonstrated that both men were shot at close range and sustained fatal gunshot wounds, with Griffin sustaining a contact wound to his neck indicating the muzzle of the gun contacted his skin. The evidence further showed that Griffin was shot six times and Dash was shot seven times. Based on the foregoing, we hold the trial court did not err in finding Barnes did not establish self-defense.

Section 16-11-450(A)

"Section 16-11-440(A) may, under appropriate facts, replace the reasonable fear element of self-defense by providing a presumption that the person's fear was reasonable under certain circumstances." *Glenn*, 429 S.C. at 118, 838 S.E.2d at 496.

> A person is presumed to have a reasonable fear of imminent peril of death or great bodily injury to himself or another person when using deadly force . . . if the person: (1) against whom the deadly force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcibly entered a dwelling, . . . or if he removes or is attempting to remove another person against his will from the dwelling . . . and (2) who uses deadly force knows or has reason to believe that an unlawful and forcible act is occurring or has occurred.

---

[2] Testimony indicated two of the projectiles found on the scene could have come from a different type of gun; however, the results were inconclusive and one of the expert witnesses explained that the projectiles could also have been shot by the weapon Barnes used.

[3] The hearing testimony indicated that Barnes did not recognize the men until after he shot them.

§ 16-11-440(A).  The presumption does not apply however "if the person [] against whom the deadly force is used has the right to be in" the dwelling. § 16-11-440(B)(1).  The presumption also does not apply "if the person [] who uses deadly force is engaged in an unlawful activity or is using the dwelling . . . to further an unlawful activity."  § 16-11-440(B)(3).

We hold the trial court did not err in finding Barnes failed to establish immunity under § 16-11-440(A) based on the lack of evidence that Griffin forcefully and unlawfully entered the apartment.  The testimony at the hearing indicated Griffin, Thomas, and Dash all knew each other, had a history as friends, and that it was normal for Griffin to visit the apartment.  While the hearing testimony demonstrated Griffin and Dash were fighting, there was no evidence or testimony that Griffin forced entry into the apartment, nor is there evidence that Barnes or Dash asked or told Griffin to leave.  Additionally, we note that the evidence demonstrates that Barnes was not involved with Griffin's entry into the apartment. We also highlight that there was testimony, while disputed, that Barnes may have seen Griffin and Dash together in the apartment earlier that morning.  Taking this evidence together with the lack of evidence of forceful and unlawful entry, we hold the trial court did not abuse its discretion by denying Barnes statutory immunity under this section.[4]

Section 16-11-440(C)

> A person who is not engaged in an unlawful activity and who is attacked in another place where he has a right to be . . . has no duty to retreat and has the right to stand his ground and meet force with force, including deadly force, if he reasonably believes it is necessary to prevent death or great bodily injury to himself or another person or to prevent the commission of a violent crime . . . .

§ 16-11-440(C).

"[A] proximate cause analysis must also be applied to the unlawful activity element of subsection (C)."  *Glenn*, 429 S.C. at 120, 838 S.E.2d 497.

---

[4] Because we conclude this situation fails to meet the elements in § 16-11-440(A), it is not necessary to analyze the trial court's findings that Griffin was a social guest or that Barnes was engaged in an unlawful activity.

We hold the trial court did not err in finding Barnes was not entitled to immunity under § 16-11-440(C). First, there was no evidence presented that Barnes was attacked by Griffin or Dash. As stated previously, there is no evidence that Griffin or Dash even acknowledged Barnes. Therefore, further analysis regarding whether Barnes was engaged in an unlawful activity or the reasonableness of his use of force is not necessary.

In sum, we hold the trial court did not abuse its discretion in denying Barnes immunity under either common law or the relevant statute, and we affirm the trial court's order denying Barnes immunity.[5]

## II.    Rap Lyrics Evidence

Barnes argues the trial court erred in admitting evidence of lyrics from a song he rapped and posted online when the State failed to disclose the evidence pretrial and when the evidence violated Rules 402, 403, and 404(b), SCRE. We agree.

"The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice." *State v. Collins*, 409 S.C. 524, 530, 763 S.E.2d 22, 25 (2014) (quoting *State v. Wise*, 359 S.C. 14, 21, 596 S.E.2d 475, 478 (2004)).

Rule 5 Violation

> Upon request by a defendant, the prosecution shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the prosecution, the existence of

---

[5] We acknowledge Barnes's arguments that he was immune from prosecution based on the common law habitation defense; however, Barnes did not argue this defense during the immunity hearing, and the trial court did not rule on the defense in its order. Therefore, this question is not preserved for our review. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial [court]."); *id.* at 142, 587 S.E.2d at 693–94 ("Issues not raised and ruled upon in the trial court will not be considered on appeal.").

which is known, or by the exercise of due diligence may
become known, to the attorney for the prosecution . . . .

Rule 5(a)(1)(A), SCRCrimP.

> Upon request of the defendant the prosecution shall
> permit the defendant to inspect and copy books, papers,
> documents, photographs, tangible objects, buildings or
> places, or copies or portions thereof, which are within the
> possession, custody or control of the prosecution, and
> which are material to the preparation of his defense or are
> intended for use by the prosecution as evidence in chief
> at the trial, or were obtained from or belong to the
> defendant.

Rule 5(a)(1)(C), SCRCrimP.

In *State v. Lawton*, this court found the trial court erred by admitting a letter
written by the appellant to his ex-wife in which he stated "my story is full of lies"
when the letter was not disclosed to defense counsel prior to trial under Rule
5(a)(1)(A), SCRCrimP. 382 S.C. 122, 125–26, 675 S.E.2d 454, 456 (Ct. App.
2009). Although the letter was used for impeachment purposes on
cross-examination of the appellant by the State, this court found the letter was
"clearly relevant" and that its disclosure "was clearly material to [the appellant]'s
defense because it likely would have affected his decision to testify, a fundamental
right." *Id.* at 127, 675 S.E.2d at 457. However, this court noted that it was not
issuing a ruling on whether the State's use of the letter violated subsection (a)(1)(C)
because the trial court did not rule on that argument. *Id.* at 126 n.5, 675 S.E.2d at
456 n.5.

We hold the trial court abused its discretion in admitting the rap lyrics evidence
over Barnes's Rule 5 objection pursuant to subsection (a)(1)(A) and *Lawton*. We
first note that the trial court stated in its ruling that it was admitting the lyrics "that
were disclosed to the defense"; however, the lyrics that were admitted were not
those disclosed to Barnes prior to trial that came from his cellphone but were
instead from YouTube. Although the rap lyrics were introduced by the State to
impeach Barnes based on his testimony that he was remorseful for the shooting and
having "nightmares," we find the lyrics were material to his defense because his
decision to testify would likely have been affected, as in *Lawton*. Barnes sought to
prove at trial that he acted in self-defense, and we find his remorse or lack thereof
for the shooting was a critical component for the jury to make its determination.

*C.f. State v. Bryant*, 369 S.C. 511, 518–19, 633 S.E.2d 125, 156 (2006) (holding the State's use of prior convictions to impeach petitioner accused of murder but claiming self-defense was improper and not harmless, highlighting petitioner's defense "hinged entirely on his own testimony" and noting "the State should not be allowed to attack the defendant's credibility with inadmissible prior convictions; especially where the [p]etitioner's credibility was essential to his defense"). The rap lyrics directly refuted Barnes's remorse, calling into question his self-defense theory. Additionally, while the State disclosed Barnes's Instagram rap video prior to trial, that video was posted prior to the shooting, and we did not find any indication in the record of what was said in that video aside from that Barnes "rapped about potentially killing someone if he was the victim of a theft." We also did not find anywhere in the record indicating when the YouTube video at issue was posted, leaving that speculation up to the jury. Therefore, we hold the YouTube lyrics impacted Barnes's theory of the case, affecting his defense and resulting in prejudice.[6] *See Lawton*, 382 S.C. at 128, 675 S.E.2d at 457 ("There is a reasonable probability [appellant] would not have testified had he known the State possessed such strong impeachment evidence. The State's strategy in failing to disclose the letter and instead surprising [appellant] with it during cross-examination clearly prejudiced [appellant].").

We find this error warrants a remand to the trial court. Barnes primarily relied on a self-defense theory at trial along with his explanation that he thought he was being robbed at the time of the shooting. There was no evidence presented apart from his own testimony at trial and accounts of what he told others to corroborate his account of why he shot Griffin and Dash. *See State v. Black*, 400 S.C. 10, 27–28, 732 S.E.2d 880, 890 (2012) ("In determining harmless error regarding any issue of witness credibility, we will consider the importance of the witness's testimony to the prosecution's case, whether the witness's testimony was cumulative, whether

---

[6] We acknowledge the State's argument that because it alluded to there being more than one rap song during the pretrial hearing on the motion to exclude, this somehow constituted disclosure under Rule 5. We do not find this argument convincing as the State did not mention YouTube videos or clearly disclose additional evidence at this stage. We also acknowledge the State's argument that Barnes was on notice of the YouTube videos because he posted the video himself on YouTube; however, we find nothing in Rule 5 that would substantiate this argument. *See Earley v. State*, 418 S.C. 255, 268, 792 S.E.2d 226, 233 (2016) (stating in dicta that a Facebook message written by the respondent should have been disclosed by the State prior to trial in compliance with Rule 5 because the statement was relevant as evidence of witness intimidation).

other evidence corroborates or contradicts the witness's testimony, the extent of cross-examination otherwise permitted, and the overall strength of the State's case." (quoting *State v. Fossick*, 333 S.C. 66, 70, 508 S.E.2d 32, 34 (1998))); *id.* at 28–30, 732 S.E.2d at 890–91 (applying the factors to determine whether the State's use of prior convictions to impeach a defense witness constituted harmless error); *see also State v. Bryant*, 369 S.C. 511, 518–19, 633 S.E.2d 152, 156 (2006) (holding the State's use of prior convictions to impeach petitioner accused of murder but claiming self-defense was improper and not harmless, highlighting petitioner's defense "hinged entirely on his own testimony" and noting "the State should not be allowed to attack the defendant's credibility with inadmissible prior convictions; especially where the [p]etitioner's credibility was essential to his defense").[7]

Based on the foregoing, the orders of the trial court are

**AFFIRMED IN PART and REVERSED IN PART AND REMANDED.**

**WILLIAMS, C.J., and KONDUROS and VINSON, JJ., concur.**

---

[7] We find this issue is dispositive. Therefore, aside from the immunity hearing, we decline to address the remaining issues on appeal. *See State v. Sweet*, 374 S.C. 1, 9, 647 S.E.2d 202, 207 (2007) (declining to address remaining issue when resolution of a different issue was dispositive).